38  190
135  584

38  190
150  50

38     190
27 SC  586

## Strouse's Executor *versus* Becker.

*Exemption from Levy and Sale on Execution, when Defendant not entitled to.—Must be claimed against every Execution Creditor.— When allowed on Attachment Execution.*

1. If a defendant against whom an execution has been issued, falsely deny the ownership of his property, thereby hindering and delaying the sheriff in the collection of the debt, he forfeits his right to the benefit of the exemption law, though the falsehood was for the purpose of gaining time for the payment of the execution.

2. A debtor must claim the exemption against every execution creditor.

3. Attachment execution is execution process, and the exemption may be claimed against a creditor proceeding by such process as effectually as against one who comes with execution in the ordinary form.

4. But the claim must be made against the attaching creditor, even though it had been preferred previously against the original creditor—the defendant in the attachment—or other execution creditors.

ERROR to the Common Pleas of *Schuylkill county.*

An attachment execution issued against Edward Becker, at the suit of Emanuel Strouse, executor of Joseph Strouse, under which the Lycoming Mutual Insurance Company were summoned as garnishees. To interrogatories filed in the usual form, the garnishees admitted an indebtedness to defendant of $137. The defendant thereupon filed a special plea, averring that the money in the hands of the garnishees arose from an allowance made to him for the injury to and destruction of household furniture by fire, insured by the company, and that the money thus due by the company is exempt from attachment under the Act of April 5th 1849, entitled "An Act to exempt property for the value of $300 from levy and sale on execution," &c.

It appeared that an execution had been sued out against Becker by another creditor, under which his household furniture had been levied on, the benefit of the exemption law claimed, and the property set apart to him, appraised at $214.25. After this levy, and one day before claiming the benefit of the exemption law, he effected the insurance on his household furniture for $400, stating in his application that it was of the value of $1000. The furniture was in defendant's dwelling-house, which was destroyed by fire, whereupon he applied to the company for damages, accompanied with a schedule of the furniture injured and destroyed, an affidavit of ownership and the amount of loss, which was given in evidence. When the levy above mentioned was made, Becker told the officer that the property was not his, but belonged to his wife, and it was contended that for this attempt to conceal his property from his creditors, he was not entitled to the benefit of the exemption law, even if the insurance-money remaining in the hands of the garnishees would otherwise be exempted from attachment.

Under the charge of the court there was a verdict and judg-

[Strouse's Executor *v.* Becker.]

ment in favour of defendant. Whereupon the plaintiff sued out this writ, and assigned for error the following matters, to wit:

1. The court erred in charging the jury as follows, viz.: "The deputy sheriff proves that when he called upon him, the defendant, with the *fi. fa.* at the suit of Mr. Roseberry, he said the property was not his, but belonged to his wife. Was this a falsehood for the purpose of putting off the sheriff and gaining time for the payment of the execution, or was the false assertion made with the intent to hinder, delay, and defraud the creditor? If the former it would not, if the latter it would and should deprive him of the claim he sets up here."

2. And in charging thus: "The plaintiff's counsel have requested us to instruct you that the money due by the garnishee may be attached and is not exempt therefrom by the provisions of the exemption law; we cannot give you this instruction."

*John W. Roseberry* and *F. W. & J. Hughes*, for plaintiff in error, in support of the first assignment of error cited and relied on Freeman *v.* Smith, 6 Casey 264; Huey's Appeal, 5 Id. 219; and in support of the second they relied on Knabb *v.* Drake, 11 Harris 489; Hammer *v.* Freese, 7 Id. 255.

*Lewis Bartholomew* and *John Bannan*, for defendant in error.—The plaintiff in error has no right to go behind the record and inquire into the facts relative to the appraisement and adjudication of the furniture to Becker upon the execution against him. The property was adjudicated to him, and if improperly done, might have been objected to by the plaintiff in the *fi. fa.*, but cannot be inquired into in this case, which is collateral to it. If this view be correct, all objection to the instruction of the court on the question of fraud in Becker is gone. If incorrect, then we insist there was no evidence of fraud to be submitted to the jury. There was no conveyance by him to his wife, as in Huey's case. Nor was the assertion that the goods then in the house belonged to his wife, untrue. He did not say he had no property there, for, after her property had been selected, his was insured. But this question was fairly submitted to the jury.

2. The property was judicially set apart for Becker, was insured by him, and destroyed by fire—why should he not have the insurance-money? In Knabb *v.* Drake, 11 Harris, the debtor voluntarily parted with the property which was exempt from levy and sale. In this case it was converted into money by the act of Providence.

The spirit of the decisions of this court is adverse to the view

[Strouse's Executor *v.* Becker.]

taken of the exemption law by the other side : Yelverton *v.* Barstow, 2 Casey 354; Grey *v.* Ehrgood, 7 Id. 329; Martin's Appeal, 9 Id. 397.

The opinion of the court was delivered, February 4th 1861, by WOODWARD, J.—The rule of decision which denies the benefit of the exemption law to a dishonest debtor who shuffles and conceals his property, denies his ownership, and falsely alleges title in his wife or other relative or friend, with a view of eluding the vigilance of the officer who has an execution to levy, is founded in a sound morality, and, according to Huey's Appeal and other cases, is agreeable also to the spirit and intention of the exemption law. It was an enactment for the honest poor, not for the roguish.

We cannot, therefore, concur with the learned judge in that part of his instructions which is contained in the first assignment of error. If the defendant's falsehood in regard to the ownership of the property in his possession was for the purpose of, putting off the sheriff and gaining time for the payment of the execution, it was just as fatal to his rights under the exemption law, as if it was made with intent to delay, hinder, and defraud the creditor. We cannot, indeed, see the ground for the court's distinction in this regard; for to put off the sheriff and gain time on the execution was, in our apprehension, to delay and hinder the creditor. The sheriff was the creditor's legal agent, and a false representation that hindered the sheriff hindered the creditor.

When an officer comes with an execution, it is the duty of the debtor, as a good citizen, if he cannot pay the debt, to facilitate the making a levy. He should exhibit his property honestly, and claim only the exemption which the law allows him. It is a hard thing, doubtless, to be strictly honest in such an emergency, but it is best, after all, even for the debtor himself. If his property be taken, his self-respect and conscious integrity are left, and he has gained a moral discipline which will go far towards repairing his fortunes. But if he equivocate and dissemble—denies the ownership of that which he cannot hide, and embarrasses the officer of the law in the execution of legal duties, he forfeits not only his self-respect, but his hold upon the exemption provided for honest debtors. And it is reasonable that he should; for what right has he to expose the officer to the peril of a suit for levying on the goods of a pretended owner, or, on the other hand, of incurring liabilities to the plaintiff for neglect of duty ? If, to escape from the dilemma in which the sheriff or constable finds himself placed, he obtains indemnity from the plaintiff, this is an inconvenience and a delay such as a debtor has no right to cause, and then turn around and show by his

admission of title and claim of exemption, that it was needless and vexatious. In a word, the law would have all men honest and sincere. To debtors who are so, it leaves $300 worth of property—to those who are not it offers no reward.

Whilst we are clearly of opinion that the judge mistook the law in saying that a falsehood which put off the sheriff would not deprive the debtor of his statutory claim, we are not quite certain from the evidence that the sheriff was really hindered—or, in the language of the learned judge, "put off." Indemnity was spoken of, but we do not see from the evidence sent up, that it was obtained or that the sheriff was delayed. If the falsehood was merely casual, and was not used at a time and in a manner to delay, hinder, or embarrass the officer, indefensible as it was, too much account would be made of it by grounding upon it a denial of the statutory exemption. It is only a lie with circumstances, that works a forfeiture. If the officer is in no degree hindered or delayed by it, no legal consequences attach to it.

The next point is decisive of the cause. The court was asked by the plaintiff, to say that the money due by the garnishee might be attached, and that it was not exempt from attachment by the provisions of the exemption law. The court refused to give such instruction.

Had the attachment been laid by Roseberry, the creditor under whose execution the appraisement was held, the refusal to give the instruction prayed for might perhaps have been justified. But Strouse was the attaching creditor, and how could the exemption that was claimed against Roseberry, avail the defendant as against Strouse? The rule is, that an appraisement is available only against the execution creditor or creditors who have levied or are about to levy. The exemption is not given against creditors in general, nor against judgment-creditors, but only against "*levy and sale on execution,* or by distress for rent." Hence the debtor must claim it against every execution-creditor. If he do not, there is nothing to prevent one execution-creditor from levying on goods that have been appraised and set apart under the process of another creditor.

Attachment execution is execution process, and the exemption may be claimed against a creditor proceeding by such process, as effectually as against a creditor who comes with execution in the ordinary form. The time and manner of making the claim must be adapted to the nature of the process, but if no claim there is no exemption. And here there was no claim as against Strouse's execution, and therefore no exemption. The point was not well put, for it may not have suggested this view of the case to the mind of the judge at all. We are inclined to believe, indeed, that it did not. Yet it ought to have been affirmed, not for the reasons urged by counsel in its support, but

2 WR.—13

because the debtor had claimed no exemption from Strouse's execution process. If on the next trial he can prove a claim, he may stand a chance of success.

The judgment is reversed, and a *venire facias de novo* awarded.