## ANDREW GARBER v. PHILIP DOERSOM ET AL.

ERROR TO THE COURT OF COMMON PLEAS OF LANCASTER COUNTY.

Argued May 16, 1887—Decided October 3, 1887.

1. The averments of a petition filed in a judicial proceeding relating to the title to property, will estop the petitioner from showing in a subsequent proceeding involving the same subject matter, a title different from that he formerly averred.
2. Co-plaintiffs, having shown a joint title, are not required to disclose the details of the arrangement under which they hold as between themselves.
3. The declarations of one in possession of lands are admissible to prove how he holds, whether as tenant or proprietor, but not to establish a parol lease or to prove its terms.

Before MERCUR, C. J., GORDON, TRUNKEY, GREEN and CLARK, JJ.; PAXSON and STERRETT, JJ., absent.

No. 119 July Term 1886, Sup. Ct.; court below, No. 32 February Term 1885, C. P.

The action was in trover by Philip Doersom and Philip Rudy against Andrew Garber to recover damages for the conversion by the defendant of two iron hog-troughs, one fat hog, about thirty tons of hay, about eighteen tons of straw, a lot of tobacco, a lot of lumber, one half interest in fourteen acres of corn, the corn-fodder on fourteen acres of ground, and certain other articles claimed by the plaintiffs.

In 1884, Jonas B. Garber was tenant of the farm of his father, Andrew Garber, the defendant, and became indebted to his father and to others, among whom were Philip Doersom and Philip Rudy. In October, 1884, Andrew Garber issued an attachment under the act of March 16, 1869, against Jonas B. Garber, and soon afterwards a second and like attachment. On November 11, 1884, Philip Doersom and Philip Rudy, to whom Jonas B. Garber had that day confessed judgments, issued executions upon which a levy was made upon the property described in the declaration in this case. Then Andrew Garber presented his petition (sufficiently set out in the opinion) praying that the sheriff be restrained from selling said property on said writs of execution, the same being bound by the lien of his attachments. The averments of this petition were supported by a deposition of the petitioner; but, on hearing, the court having found that the property under execution had not been included in the inventories made in the service of said attachments and, therefore, not being bound by the lien thereof, were liable to sale upon said executions, decreed that said petition be dismissed. At the sheriff's sale which followed, Doersom and Rudy became the joint purchasers of the property claimed. Subsequently, Jonas B. Garber having gone, Andrew Garber took possession of the farm and on demand refused to deliver to Doersom and Rudy the property in dispute, and this suit was brought.

In the plaintiffs' case in chief, Philip Doersom having testified to the joint purchase of the property, value, etc., the defendant asked on cross-examination:

Q. What was said and done between you and Mr. Rudy by reason of which he acquired a joint interest with you in these articles at sheriff's sale?

Objected to by plaintiffs. Disallowed; exception.[1]

Philip Rudy, having also testified:

Q. Please state what conversation or agreement you and Mr. Doersom had in reference to purchasing this property at sheriff's sale. Objected to by plaintiffs. Disallowed; exception.[2]

In the defendant's case in chief, Michael Mickly sworn:

Q. What, if anything, did Jonas Garber say to you in 1884, while living on his father's farm, as to the manner in which

the hay, straw and fodder were to be disposed of under the agreement with his father that he was farming the place? Objected to by plaintiff. Disallowed; exception.[3]

Andrew Garber testified: I had no written agreement with Jonas about farming; this agreement was when he went there he got the hay, the straw, corn, fodder and wheat in the ground, and when he left he was to leave the hay, straw, corn, fodder and wheat in the ground; when he left in fall of 1884 the wheat in this advertisement belonged to me; he had no interest in it whatever; if he had remained on the farm he was to feed it on the place—he was to feed it on the farm; if he left he had nothing to do with it; if he remained he would have had half the wheat; at the sale a written notice was signed by me and read by Fridy at the sheriff's sale, January 29, 1885; I can't tell what became of that notice; . . . . .

Henry Swords, sworn:

It is proposed to prove by this and other witnesses that Jonas Garber, under whose title plaintiffs claim, declared while the property in controversy was in his possession and under his control that he farmed Andrew Garber's farm on the shares, and that the hay, corn and fodder were to be fed on the farm. Objected to by plaintiffs. Offer overruled; exception.[4]

In rebuttal the plaintiffs offered the "judgment of court in Doersom v. Garber, made January 17, 1885, with reference to this property, on proceeding of defendant—whole record." Objected to by defendant. Allowed; exception.[5]

The court, J. B. LIVINGSTON, P. J., answered defendant's points and charged the jury, inter alia, as follows:

Defendant's points:

2. That under the narr. and evidence, this action of trover and conversion cannot be maintained for the corn and fodder.

Answer: Refused.[6]

If you find from the evidence that there was a money rent for $400, and nothing in the contract that the hay and straw were to be fed on the place, and if there was a money rent there is no evidence that it was, then the sheriff's sale would pass title to the hay, straw in the stack and corn-fodder to plaintiffs, and the verdict should be for plaintiffs for their value, with interest from the time of conversion.

If you find from the evidence that the contract between

Andrew Garber and Jonas Garber, was, that Jonas was to farm this farm on the shares or halves; that he was to get half the grain, and was *not* to remove any hay, straw or fodder from the farm, as Andrew and Henry Garber swear the bargain was, then your verdict should be for the defendant. Where half the crop is reserved simply by way of rent, the landlord is entitled to half the straw.

The way going crop to which a tenant is entitled where the rent is a money rent, upon his leaving demised premises, includes the straw as well as the grain, which he may remove and dispose of as he pleases, being subject only to the terms of his contract, and not to any supposed custom of the country on that subject.

[If you find from the evidence that Jonas Garber was farming this farm on the shares or halves simply, and to get half of all the crops, hay, straw and fodder, and was not restricted from removing his share, then the sheriff would have a right to levy on his share thereof, and to sell it, and the purchaser would have a right to remove them and maintain this action;] [7] unless you find that Jonas Garber fraudulently withheld the share of the crops from Andrew Garber to which he was legally entitled; if he did so fraudulently withhold the landlord's share of crops, the landlord, Andrew Garber, may recover in this action the value of such crops so withheld. If the value of the crops withheld is greater than the value of the crops here claimed, the verdict should be for the defendant. If the crops so fraudulently retained were not worth as much as the amount of the crops here claimed, your verdict should be for the plaintiffs for the difference between the value of the crops so fraudulently retained and the value of the crops here claimed with interest from the time of conversion.

The verdict was for the plaintiffs for $551.58; and, judgment being entered, the defendant took this writ assigning for error:

1–4. The rejection of defendant's offers.[1–4]

5. The admission of plaintiff's offer.[5]

6. The refusal of defendant's point.[6]

7. The part of the charge embraced in [ ][7]

*Mr. J. E. Malone* and *Mr. H. M. North* (with them *Mr. J. L. Steinmetz*), for the plaintiff in error:

1. Both Doersom and Rudy testified that they were jointly interested in the property. The question of interest was material, and it was essential to know just what the arrangement or agreement was that created the interest or interests of plaintiffs, and of this defendant was entitled to inquire on cross-examination.

2. The plaintiffs bought Jonas B. Garber's interest, and claimed under him; his declarations, made while in possession of the farm and in control of the property in dispute, were self-disserving, went to show the character of his possession and property in the articles, and, being of the res gestæ, were admissible, not as hearsay, but as original evidence: 1 Greenl. Ev. 13 ed. 228, 141, §§ 141, 143; Sheaffer v. Eakman, 56 Pa. 144.

3. The offer of the plaintiffs, which was allowed, as complained of in the fifth assignment, was the judgment and the whole record of the former proceeding; and under this offer the opinion of the court was read, which was gross error.

4. In the narr. the plaintiffs claimed simply the one half interest in the corn and fodder. Defendant claimed as sole owner thereof, so that there was no denial on part of the plaintiffs but that the defendant was a tenant in common as to the corn and fodder, and as to these articles the action did not lie: 1 Chit. Pl. 155*; Walworth v. Abel, 52 Pa. 370; Trout v. Kennedy, 47 Pa. 387.

5. Moreover, Jonas having abandoned the farm, which is undisputed, the defendant was justified in taking possession of the farm and crops, and there could be no recovery from him: McKinney v. Reader, 7 W. 123.

*Mr. J. Hay Brown* (with him *Mr. B. F. Davis*), for the defendants in error:

1. It was immaterial what arrangements the plaintiffs had as to the ownership of the property, and no plea in abatement was filed questioning the capacity in which they sued.

2. The defendant had himself alleged title in Jonas B. Garber, and attempted to sell the property as his under legal process. He is estopped from impeaching that title: Callander v. Robinson, 96 Pa. 454.

3. Even if Jonas B. Garber was not farming for a money

rent, but for a share of the crops raised, the title to the crops until divided was in him, and the purchasers, standing in his shoes, had his rights: Rinehart v. Olwine, 5 W. & S. 157; Ream v. Harnish, 45 Pa. 376.

OPINION, MR. CHIEF JUSTICE GORDON:

A brief statement of the facts of this case will, we apprehend, very clearly demonstrate that the plaintiff in error has no good reason to complain of the rulings and judgment in the court below. The plaintiffs below had two several judgments against Jonas B. Garber; on these judgments executions were issued, and levies made on the property in controversy as the property of the said Jonas B. Garber, November 11, 1884.

Preceding these executions, October 23, 1884, Andrew Garber issued an attachment under the act of 1869, against this same defendant, who is his son, and also a second writ of the same kind on the 8th of November following. Neither of these attachments were successful, for the reason that the sheriff failed to make a lawful levy on the property intended to be attached.

Then, after the plaintiffs' levy, November 20, 1884, the defendant, having discovered the mistake by which his writs were rendered nugatory, made application to the court below to restrain the sheriff from selling the property under the plaintiffs' executions. On this application of Garber, accompanied by his affidavit, the court granted a rule to show cause, which was, after hearing, January 17, 1885, finally discharged.

The petition and affidavit set forth, inter alia, as follows: " That since said writs of attachment came into the hands of the said sheriff and he attached all the goods and chattels of the said defendant, but failed to make an inventory which contained all the goods, chattels, etc., of said defendant, by reason of the said defendant refusing to give said sheriff any items or names of articles of personal property belonging to him, though requested so to do by the said sheriff, the said defendant confessed two judgments, one in favor of Philip Doersom, and the other in favor of Philip Rudy. Executions were duly issued, Nov. 11, 1884, on said two judgments against Jonas B. Garber, and the said sheriff of said county, by virtue of said executions or fi. fas., on November 11, 1884, levied on

the following of the defendant's personal property, viz. : 3 iron hog-troughs, 1 fat hog, about 30 tons of hay, about 18 tons of straw, a lot of lumber, planks, boards, scantlings and bill stuff, 9 bundles of No. 2 shingles, 2 sets of tobacco ladders, one half interest in 14 acres of corn and fodder, also rope and 3 pulleys, one chopping machine and scalding trough; and advertised by hand-bills to sell said last mentioned personal property levied on under said fi. fas., at public sale, on Wednesday, November 29, 1884. Your petitioner further represents that all of said property levied on under said fi. fas. was defendant's personal property, and in said county at the time of issuing said writs of attachment."

It thus appears that this attempted interference with the plaintiffs' writs was founded on the fact that the goods seized belonged exclusively to Jonas B. Garber, and with what conscience the defendant now sets up the contrary in order to defeat the execution of these same writs, ought to be to an honest man inconceivable. At all events, justice will permit nothing of the kind; one cannot be permitted to play fast and loose with the efforts of creditors to secure their just dues: Strouse's Exr. v. Becker, 38 Pa. 190; Huey's App., 29 Pa. 219. Therefore, for all purposes of this case, the goods in question belonged, until sold on the plaintiffs' writs, to Jonas B. Garber, and, as against the sheriff's vendees, the defendant unlawfully detained them; hence the action of trover was well brought to recover their value. It is true, were we to assume the defendant's hypothesis, that Garber and his son were joint owners of the goods, the former being in the lawful possession thereof, trespass or trover would not lie for the son's share unless it were proved that there had been an actual destruction of them by Garber: Trout v. Kennedy, 47 Pa. 387. But as the hypothesis assumed is not admissible, neither does the doctrine founded on it apply. As it was not of the least consequence by what arrangement the plaintiffs, as between themselves, claimed to hold the property in suit, so the court properly disallowed the questions covered by the first and second assignments. It was enough for all purposes of the case that the goods were sold on their writs, and bid in by one of them for both.

The declarations of Jonas B. Garber were not admissible to

establish a parol lease between himself and his father, or to prove its contents. Such declarations, made when he was in possession of the farm, might have been introduced to prove *how* he held, whether as tenant or proprietor: Sheaffer v. Eakman, 56 Pa. 144; but as the fact of his tenancy was not in dispute, the proposed evidence was admissible for no purpose. That the records in the case of Doersom v. Garber were properly admitted is not doubtful, and if there were papers among them which ought not to have gone to the jury, they ought to have them specially objected to.

The judgment is affirmed.