Philip Frank, Appellant, v. Samuel Kurtz and Jacob H. Strickler, late copartners as Kurtz & Co., and the Union National Mt. Joy Bank, Garnishee.

*Trusts and trustees—Rule as to property impressed with a trust.*

If any property in its original state and form is covered with a trust in favor of a principal, no change of that state and form can divest it of such trust or give agents or trustees converting it or those who represent them in right, not being purchasers for value without notice, any more valid claim in respect to it than they respectively had before such change.

Syllabus—Assignment of Errors. [4 Pa. Superior Ct.

A deposit in bank does not change the property in trust funds deposited by a trustee.

*Banks and banking—Attachment execution—Trust fund.*

The true ownership of a fund deposited in bank may be proved to be in another than the person in whose name the deposit is made, and such deposit does not change the property in a trust fund deposited by a trustee. Such deposit is not applicable to the payment of his debts to a general creditor, and a creditor who attaches the debt due from the bank to him can be in no better condition than the depositor.

The bank deposit of an agent of an insurance company standing in his individual name, having been attached for a debt due by the agent individually, the agent induced the drawers of a check given in payment of money due to the insurance company to stop payment thereon after it had been deposited and after the attachment had been served. *Held,* That the bank as garnishee was not liable for the amount of this check which it had never received and which did not belong to the defendant even if the check had been honored.

*Banks and banking—Attachment execution—Disclaimer of interest.*

Where a deposit standing in the name of a defendant is attached, neither he nor the bank can defeat the attachment by setting up title in a third person who disclaims ownership.

*Execution—Exemption when forfeited—Denial of title.*

If a debtor equivocates and dissembles, denies ownership of that which he cannot hide, and embarrasses the officer of the law in the execution of his legal duties, he forfeits his hold on the exemption for honest debtors.

Argued Nov. 14, 1896. Appeal, No. 146, Nov. T., 1896, by plaintiff, from judgment of C. P. Lancaster Co., Sept. T., 1891, No. 52, in favor of defendant. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Reversed.

Attachment ad lev. deb. to satisfy judgment. Before LIVINGSTON, P. J.

The facts sufficiently appear in the opinion of the Superior Court.

*Errors assigned* were (1) In those parts of the charge referred to by the plaintiff below in his exceptions thereto. The first exception is to that part of the charge in which the court says: " Among all the cases cited there is not a single case like the present, not one, in this : that the money deposited in the bank is alleged by the depositor to have been received by him as the

agent of companies which he named and deposited in this bank; that on the same day, whether before or after the attachment was served is not clear, the same agent telegraphed to the man who had given him one of these checks to stop its payment in bank; it was not paid to the bank, and the bank so says, payment was stopped, protest was entered and suit was afterwards brought by the bank in which it had been deposited and from which it had been removed, which was done before the service of the attachment against the party, who paid it again the second time to the agent."

(2) The second exception is to that part of the charge in which the court says : " Now, gentlemen of the jury, you will have to find, in the first place, from the evidence, remembering it, whether this notice given Kingsley & Son by wire was given them before the service of this attachment on the 3d of September. If it was, then you need not consider anything more in reference to that notice ; because if he ordered the party who gave him the check not to pay it to the bank, then he could not compel the bank to pay it, nor could those who issued the attachment compel the bank to pay it unless it was there and unmoved or the order not given to protest it before this attachment was issued. If you find the notice was prior to the service of this attachment upon the bank, then I say you need not consider that any further, because it could not be recovered by him nor the attaching creditor."

(3) The third exception is to that part of the charge in which the court says : " Then there would be $49.00 and some cents, you will remember the amount, which you would still further have to consider ; and it will be for you to say then whether that belongs to him or the party for whom he was acting as agent, whether paid him as his own money or paid him as their agent. He says it was paid him as agent, none of it was his, it belonged to these companies, and he shows you the amount, the bank book shows you who the check was from. He tells you that was for insurance ; and if you find that belonged to them and not to him, the attachment should not hold it, because they can follow it wherever they find it, there are earmarks sufficient for them to claim it. In that case your verdict would have to be for defendant, the Tanners' Fire Insurance Company, which has a claim."

(4) In answer to the first point submitted by the plaintiff: " 1. If the jury believe that the check of Kingsley & Son for $361 was accepted by the bank, not only for transmission or collection, but as cash, or treated it as such, then they would be warranted in finding that there was in the hands of the bank the sum of $410.58 at the time of the attachment belonging to Samuel Kurtz or to the insurance companies. *Answer :* That would be true with everything except the $361. If the jury should find that payment of that had been stopped before the service of the attachment, then the attachment would not bind it. The defendant could not recover it, nor could the attaching creditors if he ordered it stopped before the attachment was served."

(5) Answer to the second point submitted by the plaintiff: " 2. If the jury believe that the bank has credited the defendant with the Kingsley check, has never charged it back and has brought suit as a bona fide holder of the said check against Kingsley, then the bank is estopped from denying or refusing the credit it gave for this check. *Answer :* That would be subject to the same conditions that I have stated with reference to the first point. Why it was not charged back we cannot tell. They acknowledge receiving notice of protest of nonpayment."

(6) Answer to the third point submitted by plaintiff: " 3. If the jury believe that the bank on this trial disclaims any right to withhold, or does not withhold, the credit given for this check, then the jury would be warranted in finding the amount of $410.58 in the hands of the bank belonging to the defendant, or to him as agent. *Answer:* We say it would not, under the evidence of the officers of the bank on the stand. This money has not been paid, the note was protested and has not yet been collected. The jury would not be permitted to find a verdict nor the court to enter a judgment against the garnishee in such case. It is not shown the money is in the bank; it is shown it is not. It is in dispute even if correct and not denied for the attachment."

(7) Answer to the fourth point submitted by plaintiff: " 4. If the jury finds this amount to be in the hands of the bank and believe that the insurance companies, claimants, have since the attachment, been paid, then all of the said amount would belong to Samuel Kurtz, and the verdict should be in favor of the plaintiff. *Answer:* There is no evidence, as I remember, of the pay-

ment of the Tanners Insurance Co. claim; there is evidence of the payment of the Lebanon claim and the Phœnix claim; the Phœnix claim is admitted by the other side to be paid, and a statement was produced, you remember, by a witness showing he owed Lebanon nothing. It was said there was some commissions of his unsettled, for that might leave him, if paid to him, indebted to them, but that was not stated here; and the evidence so far as shown on the stand in his claim was settled, paid.

(8) In allowing the following offer of the defendant: "Defendant offers in evidence defendant's claim for the benefit of the $300 law in this attachment, filed on September 11, 1891, and marked 'J. B. L. No. 5.'" Objected to by plaintiff. Admitted for the purpose of continuing his claim. Plaintiff excepts. Defendant excepts.

(9) In not charging the jury that "the defendant could not disclaim title in the property, and at the same time file his claim for the exemption; and that if the effect of the disclaimer of title to the whole of a fund and a claim of title to a part of the same fund was to hinder, delay, or put the plaintiff to any additional expense, the defendant would not be entitled to the benefit of the exemption."

*John A. Coyle,* for appellant.—The charge of the court was incorrect and misleading: Bughman v. Byers, 21 W. N. C. 494; Com. v. Swayne, 1 Pa. Superior Ct. 547; Collins v. Leafey, 23 W. N. C. 264; Burke v. Maxwell, 81 Pa. 137; Minick v. Gring, 1 Pa. Superior Ct. 484; Reichenbach v. Ruddach, 127 Pa. 564; Herstine v. Railroad, 151 Pa. 245; Tietz v. Traction Co., 169 Pa. 516.

The plaintiff was entitled to a full and complete affirmance of his first point: Whitmire's Exrs. v. Montgomery, 165 Pa. 253; Railway Co. v. Ketcham, 122 Pa. 228; Keeler v. Schott, 1 Pa. Superior Ct. 458.

The stopping of the payment of the check was collusion: Magee v. Raiguel, 64 Pa. 110; Heath v. Page, 63 Pa. 108.

The court was in error in refusing the plaintiff's third point: Bank v. McMichael, 106 Pa. 460.

Disclaiming title to the whole of a fund and claiming title to $300 of the same fund is calculated to make a plaintiff suppose

some dishonesty is being attempted, cause him to proceed to test the matter, and therefore, he is hindered, delayed and caused expense, which result brings this case within Emerson v. Smith, 51 Pa. 90; McElroy v. Dice, 17 Pa. 163; Imhoff's Appeal, 119 Pa. 350; Kreider's Estate, 135 Pa. 578; Gates v. Railroad Co., 150 Pa. 50; Diehl v. Holben, 39 Pa. 217; Strouse's Executor v. Becker, 38 Pa. 190; Gilleland v. Rhoads, 34 Pa. 187; Huey's Appeal, 29 Pa. 219.

*D. McMullen,* for defendants and insurance companies, with him, *Brown & Hensel,* for garnishee.—Equity will follow a fund through any number of transmutations and preserve it for the owner so long as it can be identified, no matter in whose name the legal right stands: Bank v. King, 57 Pa. 202.

Where it is satisfactorily shown that money deposited in the name of one person is really the property of another, it cannot be attached as a debt due the depositor: Bank v. Ryan, 64 Pa. 236.

Credit on books of a bank is only prima facie evidence of ownership; Bank v. Mason, 95 Pa. 117.

The ownership of the fund can be shown to be different from the apparent ownership imparted by the entry in the book: Stair v. Bank, 55 Pa. 364.

Money deposited in a bank to the credit of A, may be shown to be the property of B: Hemphill v. Yerkes, 132 Pa. 552.

In this case neither the bank nor Frank is holder for value of this check.

OPINION BY RICE, P. J., April 12, 1897:

This was an attachment execution in which the Union National Mt. Joy Bank was summoned as garnishee of Samuel Kurtz, who was secretary of the Tanners' Mutual Fire Ins. Co., and agent for two other companies. These companies were permitted to become parties to the record and to plead and make defence to the extent of their several interests in the money attached. The plea was nulla bona, and on the trial of the issue evidence was given tending to prove the following facts:

Kurtz received a salary from the Tanners' Insurance Company and commissions on collections made for the two other companies. He collected premiums and assessments for these com-

panies and deposited them in his own name in the garnishee's bank, in which he opened an account for the purpose. He testified that when he opened the account he informed the teller, Mr. Longenecker, who afterwards became the cashier, that the deposits he would make would belong to the insurance companies, "barring, possibly, some commissions and salary." This was denied by Mr. Longenecker, or, to be more exact, he testified that he had no recollection that such notice was given. The deposits were marked by the teller in Kurtz's bank book and on the bank's "scratcher" with the names of the parties who paid the money. At the close of business on August 31, 1891, he had on deposit the sum of $128.39. On the following day he deposited checks amounting to $820.50 which the bank placed to his credit, and on the same day the bank honored his checks to the amount of $706.39. At the close of business for the day, the balance standing to his credit was $242.50. On the following day (September 2) he deposited $168.08, so that on September 3, when the attachment was issued and served, there was an apparent balance to his credit of $410.58. One of the checks deposited on September 2 was drawn by Kingsley & Son on another bank, and given in payment of a premium of $275.50 on a policy issued by the Tanners' Ins. Co. and of assessments, amounting respectively to $40.50 and $45, on policies in the two other companies. This check was marked "Kingsley" in Kurtz's bank book and in the bank's "scratcher." Immediately after Kurtz received notice that the attachment had been served on the bank, he requested Kingsley & Son to stop payment of the check and to pay him the amount. They complied with his request, and he accounted for the amount to the companies. The check spoken of was duly protested and the garnishee bank has brought a suit upon it against Kingsley & Son, which is still pending.

The plaintiff requested instructions to the effect that as the bank credited the defendant with the Kingsley check, never charged it back, and brought suit on it in its own name against the drawers it was estopped from denying or refusing the credit it gave therefor; in other words, it is to be treated as having the money, although as matter of fact the money never came into its hands. If the defendant had been the absolute owner of the check there might be some plausibility in this contention.

For, as we read his testimony, he did not notify the drawers of the check to stop payment until after the attachment had been served on the bank; and, obviously, nothing that he said or did after that, with regard to the payment of the check, could affect the attaching creditor's rights as against his interest in the deposit attached. But we are of opinion that the case does not turn on the question whether payment of the check was stopped before or after the service of the attachment, and that undue prominence was given to that feature of the case. The real issue was as to the beneficial ownership of the check and the credit given upon it. If, as the evidence strongly tended to show, it was in the insurance companies, then it was not subject to attachment for Kurtz's debt, and the bank was not estopped from proving that collection was prevented by the action of the companies' agent. For this reason, if for no other, it would have been error to affirm the points without qualification.

The general doctrine regarding the right to follow trust funds, is thus stated in Story's Eq. Jur., secs. 1258, 1259 (13th ed.) : " The general proposition which is maintained both at law and in equity upon this subject is, that if any property in its original state and form is covered with a trust in favor of the principal, no change of that state and form can divest it of such trust or give the agent or trustee converting it or those who represent him in right (not being purchasers for value without notice) any more valid claim in respect to it than they respectively had before such change. . . . It matters not in the slightest degree into whatever other form different from the original the change may have been made, whether it be that of promissory notes, or of goods or of stock; for the product of the substitute for the original thing still follows the nature of the thing itself, so long as it can be ascertained to be such. The right ceases only when the means of ascertainment fails." See also Bisph. Eq., sec. 86 (2d ed.).

Upon this familiar principle it is held that the true ownership of a fund deposited in bank may be proved to be in another than the person in whose name the deposit is made. Whether the bank is chargeable to the true owner must depend upon the circumstances of the case : Stair v. York Nat'l Bank, 55 Pa. 364 ; Erisman's Appeal, 1 Pa. Superior Ct. 144. But as a general

rule, where the depositor could recover in an action at law if he were the true owner, the latter can recover in his own name in an action for money had and received: Frazier v. Erie Bank, 8 W. & S. 18; Stair v. Bank, supra; Bank v. Bache, 71 Pa. 213; Farmers' and Mechanics' National Bank v. King, 57 Pa. 202. In the last cited case Mr. Justice Strong said: "A deposit in bank, then, does not change the property in trust funds deposited by a trustee. The depositor may become a creditor of the bank, but he holds the contract in trust as he held the money before. It is not applicable to the payment of his debts to a general creditor. And a creditor who attaches the debt due from the bank to him can be in no better condition than the depositor. At most he becomes a statutory assignee of a naked legal right, with the beneficial ownership in another." Applying these principles to the present case the first question is as to the true ownership of the Kingsley check. Was it in Kurtz or in the insurance companies? If the evidence on the part of the defence is to be credited—and that was a question for the jury—it belonged to the insurance companies. Being the true owners of the check they had a right as between themselves and Kurtz, and as between themselves and the attaching creditor, who stands in Kurtz's shoes, to make any arrangement they saw fit with Kingsley & Son with regard to the payment of the debts for which it was given. The only person who could object would be the bank; but as the bank was only conditionally liable to the depositor or to the true owner of the check, it could in no way be prejudiced by the arrangement made. The effect was to discharge Kingsley & Son from liability on the check and the bank from the conditional credit it had given to the depositor. It would be monstrous to hold that the bank must pay money to the attaching creditor which it never received and which, if it had been received, would not have belonged to the defendant in the attachment, and that it may make itself whole by compelling Kingsley & Son to pay it the money which they have already paid to the parties rightfully entitled to it. Fortunately no legal principle or legal fiction requires this to be done. Much is said in the argument of collusion between Kurtz and Kingsley & Son, but the fact that the arrangement was made by Kurtz can make no difference. He was the agent of the companies and must be regarded as

acting in their behalf. Assuming, of course, that they were the true owners of the check, fidelity to his principals dictated that he should omit no legitimate effort to prevent their money being taken to pay his debt. It follows from what we have said that the question as to the beneficial ownership of that portion of Kurtz's deposit represented by the Kingsley check was for the jury; and, the fact being found in favor of the theory of the defence, the legal status of the case is the same as if Kingsley & Son had stopped payment at the request of some other officer or agent of the companies, and then had paid the money directly to them.

As to the residue of the fund, a different question is presented. Conceding that, at the time of the service of the attachment, although deposited in Kurtz's name, it really belonged to the insurance companies, yet, if since the attachment he has paid their claims represented by that particular fund, then, to that extent, the fund was freed from the trust, and belonged to him. It is to be treated the same as money coming into the hands of the garnishee after the service of the attachment, and hence was bound by it: Sheetz v. Hobensack, 20 Pa. 412; Mahon v. Kunkle, 50 Pa. 216; Hays v. Lycoming Ins. Co., 99 Pa. 621. Kurtz testified, and as to this there was no dispute, that he had settled with and paid two of the companies after the attachment, and that nothing was coming to them out of the fund, and according to the testimony of the officers of the other company nothing is coming to them. Kurtz, it is true, seemed to think differently, but his assertion goes for naught as against the company's disclaimer. Where a deposit standing in the name of the defendant is attached, neither he nor the bank can defeat the attachment by setting up title in a third person who disclaims ownership. The fact being practically undisputed that any claim which the insurance companies may have had to the fund, after deducting the Kingsley check, had been extinguished by Kurtz, the plaintiff was entitled to positive instructions that it was bound by the attachment. The third and seventh assignments of error are sustained.

The admission in evidence of the defendant's exemption claim for the purpose merely of showing that he kept up his claim did the plaintiff no harm, and is not ground for reversal. But as the case must go back for retrial it will be well for the court

below to consider, in the final disposition of the case, whether, in view of the defendant's disclaimer of ownership of any part of the fund, persisted in even up to the trial, he can have it set apart to him under the exemption law. In Strouse v. Becker, 38 Pa. 190, it was said that if the debtor "equivocates and dissembles, denies the ownership of that which he cannot hide, and embarrasses the officer of the law in the execution of his legal duties, he forfeits, not only his self respect, but his hold on the exemption provided for honest debtors." This doctrine has been recognized in many later decisions: See Kreider's Estate, 135 Pa. 578, and cases there cited.

The judgment is reversed, and a venire facias de novo awarded.