## Wolf *v.* Wolf et al., Appellants.

[Marked to be reported.]

*Parol partition—Tenants in common—Severalty.*

If tenants in common, intending to make partition, run and mark upon the ground a division line, and actually take possession of their respective parts in pursuance thereof, and the partition is fully executed between them, the title will vest in severalty.

*Charge—Points—Variance—Statute of frauds.*

In an action of trespass quare clausum fregit, where the defendant relies upon a parol partition and possession thereunder to support his title, and the court in the general charge leaves to the jury the question whether the parol partition was made, but affirms a point to the effect that the testimony as to the parol partition could not be submitted to the jury under the statute of frauds, a judgment on a verdict for plaintiff will be reversed.

*Evidence—Party dead—Competency of witness—Act of 1887.*

In an action of trespass quare clausum fregit, where defendants claim

that their father, from whom they derived title, was a tenant in common with plaintiff, who was his brother, and that parol partition was made between them, plaintiff is not a competent witness under the act of May 23, 1887, § 5, (e), P. L. 159, to testify to the manner of the original acquisition of the title which took place prior to his brother's death.

*Trespass q. c. f.—Amendment—Change in cause of action—Statute of limitations.*

Where defendants in an action of trespass quare clausum fregit have occupied the land in such a manner as to give them title under the statute of limitations, plaintiffs cannot, after the twenty-one years have run, amend their declaration so as to recover for trespass on land not described in the original declaration. In such a case the amendment introduces a new cause of action for which the original action was not brought, and the statute of limitations fairly applies.

*Evidence—Cross-examination—Surveyor.*

Where a surveyor in his examination in chief testifies that he had made a draft of land described in a deed, but is not asked to state whether the land in controversy is any part of the land described in the draft, he cannot be asked in his cross-examination whether such is the case.

*Striking out testimony—Trespass q. c. f.*

In an action of trespass quare clausum fregit for cutting timber, evidence that timber was cut by a person other than defendants should be stricken out where there is nothing to show that such person was acting for defendants or by their direction.

*Trespass q. c. f.—Timber—Evidence.*

In an action of trespass quare clausum fregit for cutting timber, evidence that timber was hauled away from the land after the suit was brought is admissible.

*Evidence—Parol evidence to vary written agreement—When objection can be made—Practice—Trial.*

An offer to prove that the controversy between the parties was settled by an agreement partly in writing and partly in parol cannot be refused on the ground that verbal testimony is not admissible to alter a writing. In such a case the court cannot know in advance whether any part of the testimony is objectionable to the rule. It is only after the part of the proof which is in writing is admitted that the court can pass upon the question of the admissibility of the verbal evidence.

*Charge of court—Trespass q. c. f.—Title—Possession.*

In an action of trespass quare clausum fregit an instruction to the effect that the offering in evidence of a deed to plaintiff, and proof that the place where the alleged trespass was committed was within the description in the deed, " would entitle plaintiff to recover were there no showing on the part of the defendant that the land is not the land of plaintiff," does not show that the court intended to deny the rule that plaintiff must not only show title, but actual possession.

Argued Oct. 10, 1893. Appeal, No. 82, Oct. T., 1893, by defendants, Isaiah Wolf and George Crissman, from judgment of C. P. Armstrong Co., Sept. T., 1891, No. 186, on verdict for plaintiff, Jacob Wolf. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.

Trespass q. c. f. for cutting timber. Before RAYBURN, P. J.

At the trial, it appeared that, on April 18, 1860, John Gilpin and William F. Johnson conveyed by deed to plaintiff a tract of land, of which the land upon which the alleged trespass was committed was a part.

Evidence on behalf of defendants tended to show that prior to 1860 Daniel Wolf, defendant's father, and Jacob Wolf, plaintiff, both lived upon the land, cultivated it and cut timber from it, and that Daniel Wolf continued to live upon it until his death. Defendants also offered evidence that in August, 1871, Jacob Wolf and Daniel Wolf employed a surveyor, S. P. Briney, to run a dividing line between them; that after this line was run Daniel and Jacob took possession of their respective portions and continued in possession of them. Plaintiff denied that he had employed Briney, and averred that he had nothing to do with running the line, and did not consent to it. Plaintiff also averred that he had paid the whole of the purchase money, and that the land was his.

The record showed that suit was begun Aug. 28, 1891. On Sept. 5, 1892, an amendment to the statement was allowed. In the amendment, the land described was entirely different from that described in the original statement.

When R. S. Slaymaker, a witness for plaintiff, was on the stand, he was asked: " Q. Mr. Slaymaker, will you state if you are a surveyor ? A. I am. Q. Will you look at that draft and state if that is your work? A. Yes, sir. Q. I wish you would take the deed of John Gilpin and Wm. F. Johnston to Jacob Wolf, and state if that draft is of the property contained in that deed? A. Yes, sir. Cross-examination by Mr. Patton: Q. What was this draft made off—was it made on the ground, or was it copied off the deed ? A. Made off the deed. Q. Then it was not made on the ground at all? A. No, sir. Q. I show the witness the præcipe in this case. Mr. McCain: No, you won't. The Court: Let the witness see it. Q. I ask

him to look at that præcipe and look at that draft, and state where on the draft is the land described in the præcipe and dec· laration ?    Mr. Leason : It is not cross - examination.    The Court : No, we don't think that would be cross-examination ; we will sustain the objection and grant you an exception and bill sealed." [1]

When J. H. Painter, a witness for plaintiff, was on the stand he was asked : "Q. Mr. Painter, do you understand surveying ? A. Yes, sir.    Q. Do some of it occasionally ?    A. Yes, sir. Q. (Draft shown witness.)  Will you state if you did that work representing that survey there ?    A. I did.    Q. Did you do it on the ground ?    A. Yes, sir.    Q. Did you run this line repre- senting there north and south—did you run that line ?    A. I did not.    Mr. McCain : We offer the draft just proved and identified by witness for the purpose of comparison and exhi- bition to the jury, showing the locus in quo of the trespass com- mitted.    Mr. Patton : Objected to because not sufficiently proven, and the witness on the stand having himself stated that he did not go around it, but made it in part from other papers. The Court : Objection overruled and evidence admitted.   Bill sealed." [3]

Plaintiff proposed to ask his witness, A. G. Wolf, if he saw Lee McIntosh and Frank Caranahan and Alexander Schrecon- gost cutting timber on this piece of land wherein this trespass was committed, for the purpose of showing ownership, posses- sion and control in Jacob Wolf, the plaintiff in this case.    Ob- jected to because no connection is shown between the parties named to the plaintiff or defendant.    Now there has been nothing to show it was done with the knowledge of the defend- ant.    Objection overruled and exception. [6]

The parties named were afterwards called, and testified that they were working under plaintiff.

When B. Nulton, Esq., was on the stand, defendants offered to prove by him that there was a settlement between Jacob Wolf and Daniel Wolf about 1884, in which both parties agreed to quitclaim to each other up to the Briney line.    That part of the contract was reduced to writing ; that part of the contract was not reduced to writing, namely, that the parties were to go home, draw up quitclaim deeds, have their wives sign them, and deliver them to each other.    Plaintiff objected to the offer for

the reason that the contract and settlement was reduced to writing and signed by the parties, that defendant had shown no title to the locus in quo, and that it was a separate piece of land from that described or referred to in the settlement, that if any such a contract was agreed upon it would be void until consummated or reduced to writing and signed by the parties under the statute of frauds and perjuries ; that it was incompetent and irrelevant.   Objection sustained and exception. [7]

The court charged in part as follows :

" [Now, the offering in evidence of the deed of Jacob Wolf, showing that he has the title from Gilpin and Johnston to this land, and the place wherein this trespass or alleged trespass was committed is within the limits of that land conveyed to him, would entitle Jacob Wolf to recover were there no showing on the part of the defendant that the land was not the land of Jacob Wolf.] [8] . . . .

" [We have been requested to call your attention to some evidence.   There was called a man by the name of McIntosh, also Schrecongost, and I believe one or two others, who testified that upon this land in dispute several years ago, ten I believe it was, Jacob Wolf had a frolic upon this land and he was chopping the wood or timber off it.   That will be for you to consider along with the other testimony as to who had the ownership and occupancy of this land.] " [9]

Plaintiff's points were among others as follows :

"3.  The court is requested to say to the jury that, in the absence of any writing between Daniel Wolf and Jacob Wolf as to the title of Daniel Wolf to any part of this land, signed either by Jacob Wolf or his authorized agent, then a parol partition of the lands will vest no title to the land in dispute either in Daniel Wolf or his heirs or legal representatives, and that the testimony given in this case as to a parol partition cannot be submitted for their consideration under the statute of frauds and perjuries.  *Answer :* That point we affirm ; and we say to you that you will take the evidence as given.   If you find there was a trespass committed by these defendants you will take the evidence as given to find what the damage was for the carrying away of this timber.   Jacob Wolf, the plaintiff, put it at $300. The defendants say they took away something over one hun-

dred ties, and the evidence is that they were worth on the ground from eight to ten cents a tie." [10] ·

" 2. The defendants only set up exclusive title to the locus in quo since 1871, and they had therefore not acquired title by virtue of the running of the statute of limitations." Affirmed. [11]

Defendants' point was among others as follows:

" 8. The Briney survey having been made Aug. 30, 1871, and the declaration which describes the land from which the timber was taken not having been filed until Sept. 5, 1892, if the jury believe that Daniel Wolf and his heirs held the quiet, peaceable, notorious, open, hostile and uninterrupted possession of the land between the above dates, the verdict of the jury should be for the defendant." Refused. [12]

Verdict and judgment for plaintiff for $10.00. Defendants appealed.

*Errors assigned* were (1–7) rulings mentioned above and in opinion of Supreme Court; (8–12) instructions; quoting instructions, bills of exceptions and evidence.

*W. D. Patton, B. Nulton* with him, for appellants.—The evidence was insufficient to show possession in plaintiff: Collins v. Beatty, 148 Pa. 65.

It is improper to admit evidence of declarations by a person not connected with defendant or to make the latter responsible for his conduct: Thomas v. Miller, 151 Pa. 482.

Plaintiff was an incompetent witness as to matters occurring before his brother's death: Act of May 23, 1887, § 5, (*e*), P. L. 159; Sutherland v. Ross, 140 Pa. 379.

No damages can be recovered for injuries done after suit brought.

As to what the contract for settlement was, and as to how far parol evidence might be given to vary the writing, were questions that would have arisen after the witness had been allowed to testify that there was a contract. Then, when the contract was offered in evidence, it could have been objected to.

The court instructed the jury that plaintiff was entitled to recover upon his showing that he had a deed from Gilpin and Johnston for the land upon which the trespass was committed.

This instruction was misleading in that it ignored the law that before the plaintiff was entitled to recover in trespass quare clausum fregit he must not only have title but actual possession : Addleman v. Way, 4 Yeates, 218 ; Woodward v. Tudor, 81* Pa. 382.

A partition which merely severs the relation existing between tenants in common in the undivided whole, and vests title to a corresponding part in severalty, is not such a sale or transfer of title as will be affected by the statute of frauds : Mellon v. Reed, 114 Pa. 647 ; McKnight v. Bell, 135 Pa. 358.

The amendment introduced a new cause of action, viz., a trespass upon an entirely different piece of land after the period of limitation had expired.   This cannot be done : Tricket on Limitations, § 181 ; Wilhelm's Ap., 79 Pa. 120.

*James H. McCain, M. F. Leason*, with him, for appellee.— The question of possession of plaintiff was denied by defendants. It was therefore proper to be submitted to the jury : Mason v. Ammon, 117 Pa. 127.

Collins v. Beatty is surrounded by different circumstances from the present case ; and it must be admitted that every action of trespass is tried by the particular facts of each case.

Plaintiff was a competent witness.   There was nothing to show, at the time of his examination, that Daniel Wolf had any title to the locus in quo.

The testimony of Lee Wolf was admitted for the purpose of showing the value of timber and the amount that had been cut; and having testified to having seen them haul this timber that they had cut, it was not for the purpose of showing new trespass, but one continued trespass.; it was competent under the rulings in Trout v. Kennedy, 47 Pa. 387.

The sixth assignment is not a fair statement of the testimony and the facts.

The legal title to uncultivated land draws to it the possession, and this possession is to be deemed actual for all purposes of remedy until it is interrupted by the actual and adverse possession taken by another: Young v. Herdic, 55 Pa. 172, Hole v. Rittenhouse, 25 Pa. 492 ; for this reason Woodward v. Tudor, 81* Pa. 382, does not apply.

The amendment of the declaration was allowed without ob-

jection; it was made to correct a mistake in the description of the land in the declaration and not to include a new cause of action, or other trespasses than that alleged in the declaration; besides there was no evidence that either Daniel Wolf or his heirs had either title or possession to the land described in defendants' eighth point: Clymer v. Thomas, 7 S. & R. 178; Knapp v. Hartung, 73 Pa. 290.

OPINION BY MR. JUSTICE GREEN, December 30, 1893:

There seems to be a serious inconsistency between the general charge of the learned court below and the answer to the plaintiff's third point. There was considerable testimony to the long continued possession of Daniel Wolf and his children of the land in controversy, and of an ancient possession in common with Jacob Wolf, the plaintiff. It was not at all disputed that Daniel Wolf and his family had lived on, and cultivated, a portion of the entire tract from a time prior to the year 1860, perhaps as far back as 1854. It was also in full proof that during this period all the ordinary acts of ownership, such as plowing, fencing, gathering crops, cutting wood and timber and the usual acts and conduct of the owners of farm and wood land were carried on by Daniel and his family upon the portion of the lands occupied by them. It was also claimed by the defendants that a parol partition of the land was made between Daniel and Jacob in the year 1871, and that a division line was then run, with the consent of both parties, by a surveyor named Briney, and that after that time each of the brothers occupied and cultivated his part of the land up to this division line. Under all the testimony in the cause bearing upon these features of the case, the court below left the questions arising to the jury, saying to them, " there is a dispute as to the facts about this by these witnesses before you, and it will be for you, gentlemen, to say, from all the circumstances surrounding the case, which of these parties is entitled to credence, and we say to you that if you believe that Daniel Wolf lived upon that part of this land all this time, and that he helped pay for the land, and that he and Jacob agreed to this amicable partition of land, that is, if Jacob agreed that this line should be run and it was run and established there and recognized by them as the line, then the plaintiff would not be entitled to recover here, that would

put the title to that part of the property in Daniel Wolf." Under this portion of the charge the jury would have the whole case with them, and their verdict would settle the questions stated. But the answer of the court to the plaintiff's third point seems to take the entire subject of the alleged parol partition of the land away from the jury, and directs them practically to disregard the whole of the testimony on that subject. The point was : " The court is requested to say to the jury that in the absence of any writing between Jacob Wolf and Daniel Wolf as to the title of Daniel Wolf to any part of this land, signed either by Jacob Wolf or his authorized agent, then a parol partition of the lands will vest no title to the land in dispute either in Daniel Wolf or his heirs or legal representatives, and that the testimony given in this case as to a parol partition cannot be submitted for their consideration under the statute of frauds and perjuries." This point was affirmed by the court without qualification, and the jury was instructed that if they found a trespass had been committed they should determine what the damages were for the timber carried away. Now the case of McKnight v. Bell, 135 Pa. 358, decides precisely the reverse of this. We there held that if tenants in common, intending to make partition, run and mark upon the ground a division line, and actually take possession of their respective parts in pursuance thereof, and the partition is fully executed between them, the title will vest in severalty. This was the practical effect of what was said in the general charge, but in the answer to the point this was all taken away, and the jury was directed to disregard all the testimony on this subject. Of course the jury could not tell what they were to do in such circumstances, and for that reason we are obliged to sustain the tenth assignment. We held in McKnight v. Bell that the statute of frauds was not impinged by a parol partition of lands between tenants in common.

On the trial Jacob Wolf was examined as a witness in his own behalf. As to matters occurring after the death of his brother Daniel his competency as a witness was not questioned, but he offered and was permitted, under objection and exception, to testify to his original acquisition of title, to the payment of the purchase money, and to his continued occupancy of the land, all of which occurred long before the death of his

brother Daniel.   The controversy was over Daniel's title which had devolved upon his children, one of whom was a defendant in the case.   The plaintiff was allowed to testify that he bought the land in 1860, that he paid the whole of the purchase money, that Daniel paid none of it, and that he, Jacob, lived on the land from the time of the purchase to the time of the trial.   Now the payment of the purchase money was one of the chief questions in the case, the defendant contending that Daniel had paid his share of it, and that thereby a resulting trust arose in Daniel's favor.   As a matter of course Jacob Wolf was not competent to testify upon such subjects, as his brother's mouth was closed by his death, and the title of Daniel was directly in issue.   We therefore sustain the fourth specification of error.

An amended declaration was offered and admitted on the trial, under objection and exception.   If this were only to correct some mistake in the description of the land, leaving the identity of the land described in the writ with that described in the amendment unimpaired, there would have been no error in allowing it.   But in point of fact the land described in the amendment is an entirely different piece of land from that described in the writ.   No part of the land described in the writ is contained within the boundaries of the land described in the amendment.   It follows that the cause of action described in the writ was a trespass committed by cutting timber on one tract of land, and the cause of action described in the amendment was for cutting timber on another and different tract of land.   A trespass on the one tract would not be a trespass on the other tract.   In this case the land described in the writ was undoubtedly the land of Jacob, and if the timber had been cut on that tract, a trespass would have been committed, but the land described in the amendment is land claimed by the defendants, and the cutting of timber on that tract would be no trespass as to Jacob if the land belonged to Daniel.   The change made by the amendment, therefore, was radical and vital.   There was no attempt to prove the cutting of timber on the land described in the writ.   All the proof was of a cutting on the land described in the amendment, and if that land belonged to Daniel there was no trespass as to Jacob.   Hence the amendment attempted to introduce an entirely new and different cause of action, and should not have been allowed.

In Wilhelm's Appeal, 79 Pa. 120, it was said : " The true criterion is, as all the authorities show, did the plaintiff so state his cause of action originally as to show that he had a legal right to recover what he subsequently claims." And, citing from the same opinion : " The principle has been very accurately and succinctly stated by the present Chief Justice, in Smith v. Bellows, 27 P. F. Smith, 441 ; ' the test lies in the cause of action and not the statute of limitations. If the cause of action is the same declared upon, then the writ quoad it was brought in time. If the cause of action was not the same, then the action was not brought for it, and the statute of limitations would fairly apply.' " We therefore sustain the eleventh and twelfth assignments of error.

The witness Slaymaker was simply examined in chief to prove that he had made a draft of the land described in the deed from Gilpin and Johnston to Jacob Wolf. He did not say, and was not asked to say, whether the land in controversy was any part of the land described in the draft. Hence it was not proper cross-examination to inquire of him on that subject. The first assignment is not sustained.

The defendants in the action were Isaiah Wolf and George Crissman. On the trial, evidence was given of an act of cutting timber by another person named Merele Wolf. His name was not discovered till after the evidence was in, and then the defendant moved to strike out this testimony, but the court refused to strike it out, on the ground that it might be followed by evidence showing that he was acting for the defendants or by their direction. We have not been referred to any such testimony, and therefore think that the application to strike out the testimony of Painter in reference to acts done by this person should have been granted, and we sustain the second assignment.

We do not think the objection to the Painter draft was sufficient to warrant its exclusion, and therefore we do not sustain the third specification.

The witness Lee Wolf testified to a cutting of timber by the defendants in the spring of 1891, which was before the action was brought. He also testified to seeing some timber hauled away from the land after the action was brought, and this was competent under our ruling in Trout v. Kennedy, 47 Pa. 387. We therefore do not sustain the fifth specification.

We do not sustain the sixth and ninth specifications as the testimony of A. G. Wolf, which was admitted under exception, was immediately followed by that of the persons as to whom he testified, who clearly established that they were working under Jacob Wolf, and the cutting, being an act such as an owner would perform, was for the consideration of the jury along with all the other pertinent testimony.

We sustain the seventh assignment because the offer of proof was sufficient, and if the testimony when received supported the offer, it was competent. It would not be possible to know in advance whether any part of it might be objectionable as resting in parol and contradictory of a written agreement. After the part of the proof which was in writing was admitted, it would become possible to know whether the part of it which was verbal was contrary to the rule which rejects verbal testimony to alter or contradict a writing.

We do not sustain the eighth specification because what the court said as to the effect of the deed was strictly correct, if there were " no showing on the part of the defendant that the land was not the land of Jacob Wolf," as is stated by way of qualification in the concluding part of the clause of the charge assigned for error. We cannot infer from anything contained in this extract from the charge that the court intended to deny the very familiar rule, that the plaintiff in trespass quare clausum fregit must not only show title, but actual possession.

Judgment reversed and new venire awarded.