J-A10026-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ANDREW MCADOO | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| CHERI CARUSO | |
| Appellee | No. 1802 EDA 2016 |

Appeal from the Order Entered May 10, 2016
In the Court of Common Pleas of Bucks County
Civil Division at No(s): 2013-04549

BEFORE: FORD ELLIOTT, P.J.E., DUBOW, J., and SOLANO, J.

MEMORANDUM BY SOLANO, J.:                    **FILED OCTOBER 31, 2017**

Appellant Andrew McAdoo appeals from the order allocating owelty of $46,627.92 to him in this partition action. We affirm.

In 2006, McAdoo, his wife Michelle McAdoo, and Appellee Cheri Caruso (Michelle McAdoo's sister) purchased property in Bensalem, Bucks County ("the Property"). *See* Deed, Bucks Cnty. Deed Book 5195, p. 1323 (Dec. 1, 2006).[1] The purchase price was $200,000, but at the time of trial, the Property was appraised as having a value of only $170,000. Each party owns a 50% interest in the Property. At the time of purchase, McAdoo made an initial deposit of $5,000 and a down payment of $97,500. The parties took out a mortgage for the remaining $97,500. As of May 20, 2015, the mortgage balance was $87,575. The equity value as of that date therefore

---

[1] Michelle McAdoo died in 2007. Trial Ct. Op., 8/4/16, at 8. Prior to her death, Michelle and Andrew had owned their 50% share as tenants by the entireties.

was $82,425 ($170,000 minus $87,525). Trial Ct. Decision, 5/10/16, at 1-3; Trial Ct. Op., 8/4/16, at 3-4.

On June 18, 2013, McAdoo filed a complaint against Caruso for partition of the Property. Paragraph 6 of the complaint stated: "The [P]roperty was purchased for $195,000. [McAdoo] paid cash for his half interest and [Caruso] took out the mortgage for her half."

The trial court appointed a Master to hear all evidence and to provide a report and recommendation regarding the partition of the Property. One of the issues at the hearing was the Property's fair market value. The Master stated that McAdoo provided a report from a "real estate broker . . . dated May 6, 2015, not[ing] quite simply that the fair market rental value of [the P]roperty would be '$1,200.00 per month with a tenant paying the utilities.' There [was] no documentation or information provided for what time span the $1,200 per month would be applicable." Master's Report, 6/26/15, at 4. Caruso did not present any evidence to contradict this amount.

The Master filed his report on June 26, 2015. On July 6, 2015, McAdoo filed exceptions to the Master's Report. In his exceptions, McAdoo "request[ed] that [he] be paid $85,000.00 for his 50% interest in [the P]roperty." McAdoo's Mem. of Law in Supp. of his Exceptions to the Rep. of the Master, 7/6/15, at 4. That amount is equal to half of the appraised value of the Property, without any deduction for the mortgage. On August 11, 2015, Caruso filed a response to McAdoo's exceptions, and on April 20, 2016, the trial court held oral argument on the exceptions.

On May 10, 2016, the trial court resolved McAdoo's exceptions and awarded credits to the parties under Rule of Civil Procedure 1570(a)(5).[2] Specifically, the trial court held that McAdoo "receives credit for $102,500 for an initial deposit on the [P]roperty of $5,000.00 and a down payment at settlement of $97,500.00." Trial Ct. Decision, 5/10/16, at 2. The trial court granted Caruso the following credits, based on payments made by her:

> Mortgage Payments of Principal and Interest totaling $64,269.00.
>
> Property Taxes Paid of $10,212.00.
>
> Homeowner's Insurance Paid of $4,195.00.
>
> Total of these amounts: $78,676.00.

*Id.*; Master's Report, 6/26/15, at 4. McAdoo does not dispute any of these findings of fact, stating that "the application of the numbers is in dispute." McAdoo's Brief at 6.

The amount of the total credits awarded by the trial court, $181,176, is greater than the current equity of the Property. The trial court's equitable solution to this arithmetic conundrum is as follows:

---

[2] Rule 1570(a) includes requirements for a decision rendered in a partition action, stating:

> The decision shall include findings of fact as follows:
> . . . .
>
> (5) the credit which should be allowed or the charge which should be made, in favor of or against any party because of use and occupancy of the property, taxes, rents or other amounts paid, services rendered, liabilities incurred or benefits derived in connection therewith or therefrom . . . .

- 3 -

[E]ach party owns a 50% interest in a property that has a total net value of $82,425.00. The real issue is how to fairly address the existing equity in this property either through a buy-out or a sale. . . . [T]he [trial c]ourt finds that [Caruso]'s total contribution to the [P]roperty is $78,676.00 [and] that [McAdoo]'s total contribution to the [P]roperty is $102,500.00. The total contributions to the [P]roperty are therefore $181,176.00. [Caruso]'s ratio contributions to the whole [are] therefore 43.43% and [McAdoo's] ratio contribution to the whole is therefore 56.57%.

Accordingly, the [trial c]ourt finds that if [Caruso] wants to buy out the interests of [McAdoo], [Caruso] would be required to pay [McAdoo] 56.57% of the equity in the [P]roperty, or $46,627.82. ($82,425.00 x 56.57% = $46,627.82). Should [Caruso] wish to buy-out [McAdoo]'s interest in the [P]roperty, [Caruso] must arrange to have [McAdoo]'s name removed from the mortgage or be able to re-finance the [P]roperty to have [McAdoo]'s name removed from the mortgage.

Should [Caruso] decide not to buy-out [McAdoo]'s interest in the [P]roperty, then said property should be listed for sale with a reputable realtor, familiar with the marketplace of the specific geographic area of the [P]roperty at a reasonable selling price[,] and the net proceeds of the sale shall be distributed 56.[5]7% to [McAdoo] and 43.43% to [Caruso].

Trial Ct. Decision, 5/10/16, at 2-3.

McAdoo now raises four issues on appeal:

A. Did the [trial court] err by failing to find that the mortgage was obtained by [Caruso] to purchase her half of the real estate as stated in paragraph 6 of the complaint on which a default judgment was entered?

B. Did the [trial court] err when it failed to properly apply the statute of frauds and follow the order for partition?

C. Did the [trial court] err by placing no value on the fact [that Caruso] had sole and exclusive use of the real estate for ten years and by awarding a credit to [Caruso] for payment of [taxes, the mortgage,] and insurance?

D. Did the court abuse its discretion in reaching a result that is inequitable and unjustly enriches [Caruso] at the expense of [McAdoo]?

McAdoo's Brief at 4 (all-capitalization omitted).

Our standard of review of an order resolving an action for partition, which is an equitable remedy, is deferential: "Trial courts have broad equitable powers to effectuate justice and we will find an abuse of discretion only if the trial court has misapplied the law or failed to follow proper legal procedures." **Nicholson v. Johnston**, 855 A.2d 97, 102 (Pa. Super. 2004) (citation and internal brackets omitted), **appeal denied**, 868 A.2d 453 (Pa. 2005). A trial judge's findings of fact in an equitable matter "have all the force and effect of a jury's verdict if they are supported by adequate evidence and ordinarily will not be disturbed on appeal." **Piercing Pagoda, Inc. v. Hoffner**, 351 A.2d 207, 213 (Pa. 1976). It is similarly well-settled that the weight to be assigned evidence is solely within the exclusive province of a court sitting in equity. **Machalicka v. Lukasevic**, 31 A. 164 (Pa. 1943) (*per curiam*).

**Allocation of the Mortgage**

McAdoo first contends that the trial court "erred by failing to find that the mortgage was obtained by [Caruso] to purchase her half of the real estate as stated in Paragraph 6 of the complaint on which a default judgment was entered." McAdoo's Brief at 11. McAdoo contends that the trial court should not have treated the mortgage as a joint debt of the parties because Caruso took out the mortgage to pay for her share of the

- 5 -

$97,500 down payment. He apparently wants the entire debt charged to Caruso and objects to giving Caruso credits for payments she has made on that debt. He argues:

> As a result of the default judgment entered in favor of [McAdoo], the averment in [P]aragraph 6 of the [c]omplaint is deemed admitted by [Caruso] and is binding on the Court. . . . [The trial court has] ignored Paragraph 6 of the complaint which states that [Caruso] obtained a mortgage for her half. . . . The problem here is the [trial c]ourt's misplaced sympathy for [Caruso]. . . . In its Opinion, the [trial court] states that it has a suspicion that [McAdoo]'s contribution was a gift, but does dismiss [Caruso]'s claim that she is the sole owner of the [P]roperty. . . . Suspicions are not a basis to ignore the law or the facts in the case as supported by the record.

*Id.* at 11-12 (citations omitted). We conclude that McAdoo is not entitled to relief on this claim.

Despite McAdoo's argument, the record shows that both Caruso and the McAdoos signed the mortgage and that both McAdoo and Caruso are jointly liable for its payment. *See* Trial Ct. Op., 8/4/16, at 16. Due to that fact, the trial court properly viewed the mortgage as a joint debt, the amount of which had to be subtracted from the appraised value of the Property to determine the Property's net value. And since both McAdoo and Caruso were liable for payment of the debt, the trial court properly credited Caruso for the mortgage payments, since those payments reduced the debt of both her and McAdoo. Courts in Pennsylvania have long permitted credits for mortgage debt payments after the initial purchase of a property. *See Weiskircher v. Connelly*, 93 A. 1068, 1068 (Pa. 1915); *Fascione v.*

*Fascione*, 416 A.2d 1023, 1028 (Pa. Super. 1979); *Hickman's Estate*, 40 Pa.Super. 244, 248 (Pa. Super. 1909).

All of McAdoo's claims about what "facts" were "ignored" by the trial court in making these rulings are belied by the record. *See* McAdoo's Brief at 11. The trial court did "find that the mortgage was obtained by [Caruso] to purchase her half of the real estate," *id.*; in its opinion, the trial court wrote: "At the time of purchase, [McAdoo] paid cash for his one-half interest in the [P]roperty and [Caruso] entered into a mortgage for her one-half interest in the [P]roperty." Trial Ct. Op., 8/4/16, at 11. As for Appellant's contention that the trial court also "ignored Paragraph 6 of the complaint," McAdoo's Brief at 11, the trial court specifically contradicted this argument in its opinion, explaining:

> [McAdoo's] argument is contrary to the [trial c]ourt's Order dated May 8, 2016. . . . The [trial c]ourt also considered the fact that [Caruso] contributed to the [P]roperty, in part, by entering into the mortgage. Contrary to [McAdoo]'s argument, the [trial c]ourt did not ignore [P]aragraph 6 of the Complaint. What the [trial c]ourt did find, however, is that **in addition** to [P]aragraph 6, and not in contravene[tion] of [P]aragraph 6, [McAdoo] co-signed the mortgage document and is obligated thereunder.

Trial Ct. Op., 8/4/16, at 16 (emphasis in original) (citation omitted).

McAdoo is correct that the trial court expressed a "suspicion that the [P]roperty may have very well been purchased for the benefit of" Caruso and "was quite possibly a gift." *See* McAdoo's Brief at 11-12; Trial Ct. Op.,

8/4/16, at 11.[3]  However, the trial court explicitly stated that "there was insufficient evidence to make such a determination," *id.* at 12, and that it "agreed with [McAdoo] and rejected the argument that [Caruso]'s contribution was merely a gift[.]" *Id.* at 2.

Thus, McAdoo's first issue is meritless.

### Statute of Frauds

McAdoo's next argument is as follows:

> The [trial court] erred when it failed to properly apply the Statute of Frauds and follow the order for partition. . . . The [trial court] . . . takes into account what it found to be the "intent" of the parties.  This is error.  **There is a deed that states the [P]roperty is owned in equal shares by the parties.**  That was the clear intent of the parties.  That fact cannot be contradicted by a discussion of the possible intent of the parties.  That is a clear violation of the Statute of Frauds. See 33 P.S. § 1. . . . The [trial court] ignores its finding that the $102,500.00 was not a gift. . . . **The deed and the Order for Partition called for a fifty-fifty division of ownership.**

McAdoo's Brief at 12 (emphasis added).[4]

_____

[3] Caruso presented evidence that her sister had agreed to help her buy a home and intended the $97,500 down payment made by the McAdoos to be a gift to her to enable the purchase.  Caruso claimed that she was intended to be the sole owner of the Property and that McAdoo had his name added to the deed at the last minute.

[4] McAdoo's bald averments are unsupported by any substantive legal analysis and bereft of any legal citation other than to the Statute of Frauds. For this reason, we could find he failed to establish entitlement to relief. ***See In re Estate of Whitley***, 50 A.3d 203, 209 (Pa. Super. 2012) ("[t]he argument portion of an appellate brief must include a pertinent discussion of the particular point raised along with discussion and citation of pertinent authorities") (internal citations and quotation marks omitted), ***appeal denied***, 69 A.3d 603 (Pa. 2013); ***see also Lackner v. Glosser***, 892 A.2d 21 (Pa. Super. 2006) (explaining that appellant's arguments must adhere to

*(Footnote Continued Next Page)*

The trial court responded that the Statute of Frauds does not apply to a partition of property, Trial Ct. Op., 8/4/16, at 17 (citing cases), and we agree. The trial court was not conveying property without a deed; it was allocating interests in the value of the Property pursuant to a partition order. In these circumstances, no statute of frauds is applicable. **Wolf v. Wolf**, 28 A. 164 (Pa. 1893) ("partition of land between tenants in common is not such a sale or transfer as would be affected by the Statute of Frauds"); **see also McKnight v. McKnight**, 498 A.2d 961, 963 (Pa. Super. 1985) ("an exception [to the statute of frauds] is recognized for an oral partition of property").

From our review of McAdoo's argument, however, it does not appear that he is making an argument based on the Statute of Frauds, despite his use of that nomenclature. Instead, the focus of his argument is that the language of the deed by which the Property was acquired is controlling, and no additional, extrinsic evidence should be considered when partitioning the Property. **See** McAdoo's Brief at 12. In this respect, McAdoo is correct that there is a line of authorities that places overriding significance on the language of the deed by which the property being partitioned was acquired

_(Footnote Continued)_ ───────────

rules of appellate procedure, and arguments which are not appropriately developed are waived on appeal; arguments not appropriately developed include those in which a party has failed to cite any authority in support of a contention).

- 9 -

when fixing the interests of its co-owners.[5]  But we find nothing in the trial court's ruling to suggest that it did not follow the deed.  Throughout this case, the trial court has referred to and acknowledged that the parties are tenants in common who hold undivided, equal shares in the Property.  The trial court stated:

> [The trial court] in this case found that the parties owned the [P]roperty in equal shares, as tenants in common, as indicated by the deed that [McAdoo] attached to the Complaint.  At no point did the [trial c]ourt, or the Master, find that the parties owned the [P]roperty as anything but tenants in common with equal shares.

Trial Ct. Op., 8/4/16, at 17 (citing Trial Ct. Decision, 5/10/16, at 1).[6]  ***See generally In re Estate of Quick***, 905 A.2d 471, 474 (Pa. 2006) (rights of tenants in common).

The trial court did not apportion the property according to its view of the parties' intent; it awarded 50% of the property to each party pursuant to

---

[5] ***See, e.g.***, ***Bove v. Bove***, 149 A.2d 67, 68 (Pa. 1959) ("which one of two unmarried joint tenants ... supplied or largely contributed the purchase price for their jointly held property[ ] has no probative value whatsoever in determining whether or not the deed for the property evidences an intention on the part of the grantees to create a joint tenancy in themselves with right of survivorship"); ***see also Teacher v. Kijurina***, 76 A.2d 197, 200-02 (Pa. 1950); ***Maxwell v. Saylor***, 58 A.2d 355 (Pa. 1948); ***Moore v. Miller***, 910 A.2d 704, 705, 708-09 (Pa. Super. 2006).

[6] ***See also*** Trial Ct. Op., 8/4/16, at 1 ("each own the [P]roperty as tenants in common with equal share"), 2 (McAdoo "cited to the deed to the [P]roperty which states that the parties own the [P]roperty as tenants in common in equal shares"), 8 ("[t]he parties each own 50% share in the single family home as tenants in common, as reflected by the deed"), 11 ("both [McAdoo] and [Caruso] now own one-half interest in the [P]roperty as tenants in common").

- 10 -

the deed. The court was obligated, however, to then exercise its judgment to award credits to each party in calculating the owelty due as a result of the partition. Pa.R.C.P. 1570(a)(5). The trial court exercised its equitable judgment in doing so. Its performance of that task did not implicate, or violate, the Statute of Frauds.

### Fair Rental Value

The trial court declined to allow McAdoo a credit for the fair rental value of the Property during the period that Caruso occupied it. McAdoo contends that this result was inequitable, and he maintains that "[f]air rental value should be awarded where [McAdoo] showed that he was not in possession of the [P]roperty and that [Caruso] and her family had sole and exclusive possession of the [P]roperty." McAdoo's Brief at 8-9. He maintains that the evidence was uncontradicted that the fair market value was $1,200 per month. *Id.* at 13. McAdoo additionally argues that the trial court "failed to take into account the delaying actions of [Caruso]. . . . [F]ilings by [Caruso] that were dismissed for failure to follow the rules . . . delayed this action by almost two years." *Id.* at 14. McAdoo concludes that "[n]o setoff for the exclusive use by [Caruso] is contrary to law and not equitable." *Id.* at 15.

The trial court responded: "As it relates to the issue of rent, the evidence and potential calculations are unclear in this matter and the [trial c]ourt is uncomfortable making a finding based on the information at hand." Trial Ct. Decision, 5/10/16, at 3. The trial court explained:

> The Master rejected [McAdoo]'s claim for rent credits as the May 6, 2015, real estate broker statement presented simply noted that the fair market rental value of the property would be $1,200.00 per month with a tenant paying the utilities, but had no indication as to what time span the $1,200 per month would be applicable. . . . [McAdoo] presented no additional evidence to th[e trial c]ourt regarding the issue of rent when he filed his Exceptions to the Master's Report. . . . With respect to [McAdoo]'s argument that the [trial c]ourt is in error by placing zero value on the fact that [Caruso] has had sole and exclusive use of the real estate for ten years, the [trial c]ourt, and the Master, specifically held that [McAdoo] had failed to meet his burden of proving credits for rent.

Trial Ct. Op., 8/4/16, at 4, 14, 18 (citing Trial Ct. Decision, 5/10/16, at 3; Master's Rep., 6/26/15, at 4).

This Court is "bound to accept the findings of the trial court," **Nicholson**, 855 A.2d at 100, and must "consider the evidence in a light most favorable to the verdict winner." **Richards v. Ameriprise Fin., Inc.**, 152 A.3d 1027, 1034 (Pa. Super. 2016). The fair rental value of the premises is a permissible potential credit owed to the party not in possession of the property by the party in exclusive possession of the premises. **Sciotto v. Sciotto**, 288 A.2d 822, 823–24 (Pa. 1972); **Hoog v. Diehl**, 3 A.2d 187, 189 (Pa. Super. 1938). The trial court did not dispute this principle. But the court held that it could not award McAdoo a credit for the fair rental value because McAdoo failed to prove what that value was. Our thorough review of the record confirms that the trial court is correct – McAdoo presented no evidence of the duration for which the assessment of $1,200.00 rental value was applicable. That the evidence was uncontradicted misses the point. Caruso occupied the Property from 2006 to

the time of trial. McAdoo failed to establish that the rental value would be the same throughout Caruso's occupancy. Hence, we find no error in the trial court's determination, and, thus, the issue of a credit to McAdoo for the rental value of the Property is meritless.

**Equitable Result**

McAdoo contends that the credits awarded to Caruso were inequitable. In support of his argument, McAdoo cites the trial court's failure to award him a credit for fair market value and its award of a credit to Caruso for mortgage payments, as well as a credit given to Caruso for payment of taxes and insurance premiums:

> The [trial c]ourt's decision results in [McAdoo] paying for half of the mortgage, taxes, and insurance on top of his contribution of $102,500.00 to the purchase of the property. The result is he pays for seventy-five percent and receives only twenty-five percent of the value of the property. This is not equitable. This is in conflict with the deed and with Judge Cepparulo's Order for Partition which both provide for a fifty-fifty division.
>
> It is an error to place zero value on the fact that [Caruso] has had sole and exclusive use of the real estate for ten years. In the alternative, if the use of the property has zero value, there should be no credit for [Caruso's] payment of the mortgage, taxes, and insurance.
>
> The [trial c]ourt's Order results in [Caruso's] cost to reside at the property for ten years to be only $42,878.82 or $357.33 per month. ($78,676.00 contribution less equity retained of $35,797.18.) This is not an equitable result. It should also be noted that without the retained equity, [Caruso's] monthly cost for the ten years would only be $655.63 per month. Those costs should have been taken into account by the court. As it stands, [Caruso] is being unjustly enriched at [McAdoo's] expense.
>
> The [trial c]ourt's Order results in [McAdoo] having no use of his funds or the real estate for ten years and a loss of $55,872.18

- 13 -

($102,500.00 contribution less payment of $46,627.82 from [Caruso]). This is not an equitable result. As it stands, [Caruso]is being unjustly enriched at [McAdoo's] expense.

The Order and Decision [are] not just or equitable and result[] in a devastating loss to [McAdoo] and to [McAdoo's] and his deceased wife's young son of over $55,000.00.

The [trial c]ourt's Order and Decision cannot be reasonably drawn from the record and should be overturned.

McAdoo's Brief at 15-16 (citations to the record omitted).

The trial court stated that, while it was "tempted to simply award 50% of the net equity to each party," it "reviewed the Master's Report and the arguments of counsel presented at the proceeding on April 20, 2016, and [found] that some analysis of credits is necessary to obtain a fair and equitable result." Trial Ct. Decision, 5/10/16, at 2. The trial court continued:

In order to determine a fair distribution, the [c]ourt [sought] to determine a fair ratio of the parties' economic contributions to the [P]roperty and then apply the same ratio to the net equity. . . . Accordingly, all payments made by [Caruso] benefited each party equally as each party has a lawful obligation to pay the mortgage, the taxes, and the insurance, etc.

*Id.* As noted above, the trial court granted Caruso the following credits, based upon her total payments:

Mortgage Payments of Principal and Interest totaling $64,269.00.

Property Taxes Paid of $10,212.00.

Homeowner's Insurance Paid of $4,195.00.

Total of these amounts: $78,676.00.

*Id.* The trial court then explained:

> In keeping in line with [McAdoo]'s argument that th[e trial c]ourt should not consider any familial relationship or treat the parties' purchase as anything but two people purchasing a property together, th[e trial c]ourt notes that the deed reflects that the parties are tenants in common with equal shares.
>
> [McAdoo]'s argument is flawed. Appellant mistakes the purchase value of the [P]roperty with the actual value of the [P]roperty. The purchase price of the [P]roperty was $200,000.00. However, according to the property appraisal dated March 17, 2015, the [P]roperty is now only worth $170,000.00. Additionally, the [P]roperty is encumbered by a mortgage, signed by both parties, with a balance of $87,575.00. The reality is that if the [P]roperty was sold today and the net proceeds divided in equally in accordance with the deed, each party would only receive $41,212.50. After taking into consideration of the parties' credits, the [trial c]ourt ultimately determined that the buy-out price was to be $46,627.82, or 56.57% of the net proceeds of the sale. Therefore, [McAdoo] would not be receiving only 25% of the [P]roperty's value upon partition.
>
> As for [McAdoo]'s argument that he paid 75% of the purchase value of the [P]roperty, that is also not the case. [McAdoo] contributed $102,500.00 in cash towards the [P]roperty. [Caruso] has so far contributed $78,676.00 in mortgage, tax, and insurance payments. Together, the parties have paid out of pocket a combined total of $181,176.00. By this calculation, [McAdoo] did not contribute 75% for the [P]roperty, but only 56.57%.

Trial Ct. Op., 8/4/16, at 20-21.

After a thorough review of the record and the briefs of the parties, we conclude that the trial court's rationale is sound and that its result is equitable. The trial court has fashioned a fair and just solution for proportioning the value of a property, where the parties have expended more on the property than its current fair market value and where the

- 15 -

property is encumbered by a mortgage. Based upon the well-reasoned opinion of the trial court, we conclude that there is no merit to McAdoo's broad claim that the trial court's decision was inequitable, and we therefore find no abuse of discretion by the trial court in this respect. *See Nicholson*, 855 A.2d at 102.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/31/2017